UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SARAH MARTIN,

    Plaintiff,

v.                                            Case No.  8:23-cv-01507-SPF

MARTIN O'MALLEY,
Commissioner of the Social
Security Administration,

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**    **Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 250–63).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 112–21, 129–44).  Plaintiff then requested an administrative hearing (Tr. 145).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34–73).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7–26).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1981, claimed disability beginning June 15, 2019 (Tr. 10, 253). Plaintiff obtained a GED and completed three years of college (Tr. 283). Plaintiff's past relevant work experience included work as an informal waitress (Tr. 19). Plaintiff alleged disability due to depression; anxiety; post-traumatic stress disorder; spinal herniations in back; plantar fasciitis, neuroma, pain, inflammation of fifth metatarsal joint, and difficulty walking in her left foot; pain, inflammation, and a limited range of movement in her left hip; pain and inflammation in her right knee; pain and inflammation in her left thumb joint; pain with prolonged sitting from HSV2; and attention deficit hyperactivity disorder (Tr. 282).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since June 15, 2019, the alleged onset date (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, major depressive disorder, and generalized anxiety disorder (*Id.*). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13–16). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work with the following limitations: "the

claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally climb ladders, ropes, and scaffolds; must avoid concentrated exposure to the use of dangerous moving machinery and exposure to unprotected heights; and can perform simple tasks." (Tr. 16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 17).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work (Tr. 19). However, given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a laundry laborer, floor waxer, and stores laborer (Tr. 20). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment"

is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV. Analysis**

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's borderline personality disorder, and requests that the case be remanded to the ALJ to discuss whether Plaintiff has the impairment of borderline personality disorder and, if so, how it impacts her ability to perform work-related activities (Doc. 21 at 3–5). The Commissioner responds that the ALJ properly considered the record as a whole and Plaintiff's mental

5

functioning in determining her RFC, which is supported by substantial evidence (Doc. 23 at 4–7).  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

Nothing requires the ALJ to identify, at step two, all of a claimant's severe impairments.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  Instead, at steps three and four, the ALJ is required to consider the claimant's medical condition as a whole.  *Id.* When an ALJ evaluates a claimant's mental impairments at steps two and three, he or she employs the PRT to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005).  The ALJ incorporates the results of the PRT into the findings and conclusions at steps four and five of the sequential evaluation process.  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).[1]  But the PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments.  The mental RFC is a more detailed assessment of the claimant's ability to function.  *Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1180 (11th Cir. 2011).  In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three.  *Id.*

---

[1] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, major depressive disorder, and generalized anxiety disorder (Tr. 13). He then stated that, for "all other impairments alleged and found in the record, . . . the undersigned finds that they are nonsevere and not medically determinable as they have been responsive to treatment, [and/or] cause no more than minimal vocationally relevant limitations" (*Id.*). He then stated that he considered all of Plaintiff's medically determinable impairments, including those that are not severe, when assessing Plaintiff's RFC (*Id.*). He then proceeded through the PRT and found that Plaintiff had mild limitations in the areas of understanding, remembering, or applying information; interacting with others; and adapting or managing oneself (Tr. 14–15) and a moderate limitation in the area of concentrating, persisting, or maintaining pace (Tr. 15). The ALJ then proceeded through the sequential evaluation process and assessed Plaintiff's RFC. The ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 16).

Plaintiff identifies treatment records from Premier Community Health Clinic as support for the proposition that her "borderline personality disorder is and was an active problem" (Doc. 21 at 4). But while borderline personality disorder is listed among Plaintiff's diagnoses or "active problems and conditions" in these records, the treatment notes are devoid of any complaints of symptoms or limitations from borderline personality disorder, or any action taken by her providers to address her borderline personality disorder (Tr. 489–507, 520–63, 586–661, 702–40). At her consultative psychological

7

examination in January 2021, Plaintiff reported symptoms of anxiety and depression, but did not reference borderline personality disorder (Tr. 471–82).  At another psychological evaluation in January 2022, Plaintiff reported a prior diagnosis of borderline personality disorder, but the examiner found her symptoms more consistent with autism spectrum disorder (Tr. 786–807).

In the course of the ALJ's PRT and RFC analysis, he thoroughly discussed Plaintiff's mental health treatment records, including the records from Premier Community Health Clinic that reference borderline personality disorder, and noted that the mental status examinations performed during these visits consistently noted findings within normal limits (Tr. 18).  The ALJ also found partially persuasive the opinions from the state agency psychological consultants, who opined that Plaintiff did not have any severe mental impairments because her depression and anxiety caused no more than mild limitations in the areas of mental functioning, because they were consistent with the findings reported by the psychological consultative examiner and the reports from Plaintiff's providers (Tr. 19).  This qualifies as substantial evidence in support of his finding that borderline personality disorder does not cause work-related limitations.

Thus, although the ALJ did not specifically discuss borderline personality disorder, the ALJ stated that he found all other impairments alleged and found in the record to be nonsevere as they did not cause work-related limitations (Tr. 13).  He then stated that he carefully considered the "entire record" in assessing Plaintiff's RFC and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 13, 16).  Thus,

Plaintiff has not shown that the ALJ failed to consider her borderline personality disorder. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 n.3 (11th Cir. 2010) (ALJ's statements that he considered "the entire record" and "all symptoms" indicate he considered all of claimant's impairments); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings). Indeed, the ALJ does not have to discuss every single piece of medical evidence in the record. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808–09 (11th Cir. 2013) ("Despite [the claimant's] assertions to the contrary, the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits." (citations omitted)).

Moreover, the ALJ specifically discussed records that reference borderline personality disorder (Tr. 14–15, 489–507, 520–63, 586–661, 702–40). The ALJ's repeated references to these records make it evident that the objective evidence set forth therein was considered by the ALJ even though not specifically discussed. *See Ingram v. Astrue*, No. 8:07-cv-1591-JDW-TBM, 2008 WL 2943287, at *5 (M.D. Fla. July 30, 2008) ("In light of the ALJ's repeated reference to these records, I am obliged to find that the objective evidence set forth therein was also considered by the ALJ even if not specifically mentioned."). As such, the Court cannot find any error in the ALJ's consideration or discussion of borderline personality disorder.

9

Finally, Plaintiff bears the burden of proving she is disabled. 20 C.F.R. §§ 404.1512, 416.912; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Plaintiff did not mention borderline personality disorder in her written applications (Tr. 250–61). While Plaintiff's counsel mentioned borderline personality disorder at the hearing before the ALJ (Tr. 41), it is the functional limitations imposed by a condition, rather than the mere diagnosis of the condition, that determines disability. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Plaintiff did not demonstrate any specific functional limitations resulting from her borderline personality disorder that the ALJ should have considered. The Court's review of the medical record indicates that no doctor, treating or otherwise, placed limitations on Plaintiff due to borderline personality disorder. Additionally, when questioned on whether Plaintiff had any further testimony, Plaintiff failed to raise limitations from borderline personality disorder (Tr. 56, 63).

### V.     Conclusion

Accordingly, after consideration, it is hereby ORDERED:

1. The decision of the Commissioner is affirmed.
2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on August 5, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE